No.7255.

# 7255

STATE OF LOUISIANA

GLEN FLEMING, RECEIVER

VS

H. E. GROFFMAN.

COURT OF APPEAL

PARISH OF ORLEANS.

# OPINION.

St. Paul/ Judge.

Plaintiff, who is the Receiver of a ~~defendant~~ *defunct* corportaion, brings this action upon a contract of indemnity, the nature of which will hereafter appear.

The defenses are 1. Want of Consideration: 2. That the condition on which same was given has not happened, 3. That the parties for whose benefit same was given, have suffered no loss.

The facts are these: The corporation was organized with the object in view of giving a fair or exposition, and its stock was subscribed for that purpose. On December 26th, 1913, the Board of Directors (of which defendant was a member) held a meeting, at which the following took place:

> "Meeting was called to order by President Hobbs, who read a letter from Mr. Kaufman outlining the proposition under which he would accept employment with the Association.
>
> "A resplution was offered by Mr. Moore, seconded by Mr. Hartwell, and carried, that;
>
> "Whereas the letter containing a# proposition of Mr. Herbert Kaufman has been presented to us, and carefully considered, and believing that said contract is advantagious to the Exposition Company.
>
> "Therefore be it resolved, that the Exposition Company, enter into said contract with Mr. Herbert Kaufman, and hereby authorize the President to sign said letter in acceptance thereof on behalf of the exposition company, and to attach a copy of this resolution thereto.
>
> "Mr. Cave stated that he was not in favor of the pwsposition and voted no.

At the same meeting, after the transaction of some routine business, and before adjournment, the following action was taken;

> "Resolution was offered by Mr. Wexler, seconded by Mr. Beekman, and unanimously carried, that in order to guarantee all subscribers to the Exposition Co. against a possible loss which they might sustain in the event no exposition is given, the Board would make an effort to secure sufficient names to the guarantee to cover Mr. Kaufman's expenses for six months in case there is no exposition held. If the exposition project is carried out these gentlemen to be reimbursed for any money they may have spent in this guarantee.
>
> Mr. Wexler, Mr. Hartwell, Mr. Freeman, Mr. Beekman. Mr. Groffman, and Mr. Grunewald, pledged themselves for $500 each on this guarantee. Mr. Aschaffenberg, Mr. Mr. Pfaff, Mr. Moore, and Mr. Cave, pledged themselves for $300 each, Mr. Smith pledged himself for $100.

On the day following the meeting of the Directors, or within a
few days thereafter, the following document was executed;

> "Appreciating the servoces of Mr. Herbert Kaufman as
> organisation manager and advisor to the Exposition Co. and
> his peculiar fitness for the work to be undertaken, the Board
> of Directors at a meeting held on Friday December 26th,
> unanimously accepted his proposition for the continuance of
> his services at a compensation of $12.500 for a period os six
> months, and for an additional $12.500 for a further period of
> six months provided the Exposition be given, of which the
> Board has no doubt.
>
> "In order to guarantee the subscribers to the exposition
> against the possible loss thich they might sustain in the
> event no exposition is given, the undersigned each for himself
> and not for the others, guarantee to the Exposition Company
> the amount set opposite their respective names; and in the
> event that it should be decided at the expiration of six
> months from January 1st 1914, not to hold an exposition in
> the City of New Orleans, each of us hereby agrees to pay the
> amount set opposite our respective names to the Exposition
> Co in full satisfaction of the guarantee herein given.

(Signed)

| | | |
|---|---|---|
| Ben Beekman, | 12/27/13 | $500 |
| Sol Wexler | 12/27/13 | 500 |
| C. A. Hartwell | 12/27/13 | 500 |
| H. E. Groffman | 12/29/13 | 500 |
| John J. Gannon | 12/29/13 | 500 |
| Theo Grunewald | 12/29/13 | 500 |
| Val Merz | 12/29/13 | 500 |
| Lawrence Fabacher | 12/30/13 | 500 |
| Thomas J. Freeman---------- | | 500 |

This document thus executed was delivered to the Exposition Company,
and placed among its archives, where it was found by the Receiver.

On May 23rd, 1914, the Board of Directors met in special session
and the following action was taken;

> "The matter of cancelling the contract with Mr. Herbert Kaufman
> was taken up and opinion from the Attorneys read.
>
> "The following resolution was proposed by Mr Casanas, seconded
> by Mr Aschaffenberg and unanimously carried;
>
> "Resolved, that it being utterly impossible and impractical to
> hold ###### an exposition in the City of New Orleans as contem-
> plated in the letter of Mr Herbert Kaufman to this Board, of date
> December 23rd 1913, under which letter, and in in consideration
> of the holding of such an exposition this Board signed a contract
> with the said Kaufman for a period of one year, with the privileg
> of rescinding same at the termination of six months if such
> exposition was abandoned, a resolution to that effect having been
> adopted on December 24th 1913, it is the desire of this Board now
> to abrogate the said contract with the said Kaufman in so far as

53

the six months beginning June 24th 1914, are concerned, for the
reason above stated, and the action of this Board on December
24th 1913, in so far as the said six months are concerned, is
now annulled and avoided."

The candor of counsel relieves us from the necessity of pointing out
the motive which induced the defendant and his associates to execute
this document. From the brief of defendant we quote as follows;
t

"Your Honors can readily see why the directors of the Exposition
Company undertook to sign the document which they did. They had
entered into a contract with Mr Kaufman by which they agreed to
pay him at the princely rate of $25,000 per annum. They felt
that this was perhaps, if not beyond, at least straining their
authority as directors, and so as to relieve themselves from
any possible eventual criticism by the stockholders, a certain
number of them, without receiving any consideration whatever,
signed the document on which this suit is founded, agreeing to
pay $500 each to protect the stockholders against any possible
loss."

And the very clear and full recitals of the petition show us the
exact situation of the corporation's affairs.

From this petition we quote as follows;

"Now your petitioner further represents that the Southern States
Fair and Pan American Exposition Company is hopelessly insolvent.
x x x x

&"That in order to pay the debts of said Company it is necessary
that your petitioner in his official capacity should collect all
the outstanding debts and obligations due to the said Company,
including that still due by the defendant herein, and also
the due and unpaid subscriptions to the capital stock of said
Company; all of which, if collected, will still leave said
Company insolvent."

1.

We are of opinion that the document sued upon was given upon
sufficient consideration. Defendant had just approved in a
                                              in
fiduciary capacity the expenditure of money which others had an
equitable interest. He acknowledged that his act might have been
subject to adverse criticism. He executed a document intended to
disarm that criticism, and placed it in the hands of the Corpor-
ation, the trustee for those others. He meant that on finding it
they should porbear to criticise and forbear to test judicially
the legality of his action, and should rely exclusively upon his
bond; and he left them free to accept it as long as it was not
withdrawn.

54

11.

We are likewise of opinion that the condition on which the obligation was given has happened. Adhering to the letter of an instrument somewhat unskillfully drawn up, defendant insists that the condition upon which the bond was given was that it should be decided within six months that no exposition whatever be given. By every technical rule of coshruction, this, ######### interpretation must be rejected. Thus, the instrument was drawn by defendant and must be construed against him where ambiguos. And ####### again, defendant and his associates had it in their power not to decide within six months and thus ahnul the bond; but the bond must be saved if possible.

But it is perfectly clear that what defendant and his associates had in mind was an exposition according to the plans of Kaufman. They realized that if such an exposition failed, then the salary paid Kaufman might be a clear loss to stockholders, and it was this loss they meant to reimburse. A condition in a contract must be interpreted according to the same rules of common sense which should prevail in the interpretation of the main obligation, and hence the meaning thereof must be drawn from the whole instrument and not from a single clause.

111.

We think however that the obligation herein assumed was intended solely for the benefit of stockholders and not for the benefit of creditors; that it was intended to indemnify the former for any loss which they might spstain by reason of the salaries paid to Kaufman, but was never intended to inure to the benefit of any others. The resolution of December 26th, and the bond which followed it both declare explicitly that the purpose thereof is, "In order to guarantee the subscribers to the exposition against any possible loss which they might sustain in the event no exposition was given."

And we likewise think that the subscribers have not sıffered the loss which the directors had in mind when they undertook to bind themselves. For although the resolution and gaurantee both speak of "any possible loss which the subscribers might sustain

55

in the event no exposition is given," yet from the body of the one and the preamble to the other, it is perfectly clear that they had in mind only the "expens###, i.e. salary of Mr Kaufman. In other words they did not intend to gaurantee the success of Mr Kaufman's plans, of which the subscribers must necessarily soon become aware and approve or disapprove for themselves; but they did mean that the subscribers should not in addition to bearing any loss resulting from the weakness of Kaufman's plans, be called upon to pay the large salary of which they might possibly not be aware.

Now the event shows that they were not, are not, and cannot, be called upon to pay this salary, as the paying out of this salary has affected the creditors alone and made not one whit of difference to the stockholders.

For suppose that instead of merely guaranteeing the reimbursement of this salary the directors had paid it out of their own pockets; or that when Kaufman was sent off they had promptly paid ### in to the corporation the amount of their guarantee: or that Kaufman himself on leaving had reimbursed the corporation the full amount paid him. This would have been all that the most exacting stockholder could have asked. And yet the only effect thereof would have been to leave $12,500 more for the creditors, and it would have ######## profited the stockholders nothing, since the corporation is "hopelessly insolvent," and would still be insolvent if this whole amount and all stock subscriptions were collected in full.

Bearing in mind then that these directors had no intention to guarantee the success of Kaufman's plans, and no intention to guarantee the debts of the corporation: that had their guarantee been fulfilled to the letter or even anticipated, the stockholders would have gained nothing and stood no better off than they stand now: bearing this in mind, we are clearly of opinion that the Receiver is entitled to collect these amounts neither for the benefit of the creditors who are without rights upon the instrument,

nor for the benefit of the stockholders who have not suffered any loss which the defendant agreed to make whole.

The judgment appealed from was for defendant, and we find it correct.

Judgment Affirmed.